ALAN R. OUELLETTE, CA Bar No. 272745
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

JEFFREY N. COSTAKOS (*Pro Hac Vice* motion forthcoming)
    jcostakos@foley.com
MATTHEW W. PETERS (*Pro Hac Vice* motion forthcoming)
    mpeters@foley.com
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE:  414.271.2400
FACSIMILE:  414.297.4900

LUCAS I. SILVA (*Pro Hac Vice* motion forthcoming)
    lsilva@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE:  617.342.4000
FACSIMILE:   617.342.4001

Attorneys for Plaintiff PEOPLE.AI, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE.AI, INC., | Case No. 3:20-cv-9148 |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| SETSAIL TECHNOLOGIES INC., | |
| Defendant. | |

1.      Plaintiff People.ai, Inc. ("People.ai") is a Delaware corporation having offices at 475 Brannan Street, Suite 320, San Francisco, California 94107.

2.      On information and belief, Defendant SetSail Technologies, Inc. ("SetSail") is an entity organized under the laws of California and having a principal place of business at 400 Concar Drive, San Mateo, California 94402.  Upon information and belief, SetSail has made, sold, offered for sale and used, and continues to make, sell, offer for sale, and use the infringing products as described herein.

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

4.      This Court has personal jurisdiction over SetSail in that, at all times pertinent hereto, upon information and belief, SetSail is a corporation organized and existing under the laws of the State of California, with a principal place of business located in this District. SetSail is also committing infringing acts in this District. Upon information and belief, SetSail also induces direct infringement in this District.

5.      Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because SetSail resides in this Judicial District.  SetSail also has substantial additional activities in this Judicial District as alleged herein.

6.      As alleged herein, SetSail – individually and/or jointly with others – has infringed (literally and/or by equivalents), and continues to infringe, People.ai's patent rights by making, using, importing, selling, and/or offering to sell products covered by one or more patent claims – or by performing any method claimed therein – within the United States, and/or by contributing to or inducing such infringement.

7.      People.ai is the owner of all rights, title and interest – including the right to bring a suit for patent infringement – in United States Patent Nos. 10,679,001, titled "Systems and Methods for Auto Discovery of Filters and Processing Electronic Activities Using the Same" ("the '001 patent") (copy attached as Exhibit A, hereto), 10,565,229, titled "Systems and Methods for Matching Electronic Activities Directly to Record

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

Objects of Systems of Record" ("the '229 patent") (copy attached as Exhibit B, hereto), 10,496,634, titled "Systems and Methods for Determining a Completion Score of a Record Object from Electronic Activities" ("the '634 patent") (copy attached as Exhibit C, hereto), and 10,657,129, titled "Systems and Methods for Matching Electronic Activities to Record Objects of Systems of Record with Node Profiles" ("the '129 patent") (copy attached as Exhibit D, hereto), and (collectively, the "Patents-in-Suit").

8.     People.ai is an industry leader and top supplier of revenue operations and intelligence systems to businesses. People.ai's product offerings enable businesses to improve their business activity data collection and analysis.  The Patents-in-Suit generally relate to methods and systems for improving the functionality of a customer relationship management ("CRM") software program or systems that maintain, update or analyze CRMs, by capturing, maintaining, and interpreting customer interaction data and other information, as well as to improved methods and systems for forecasting business performance by accurately creating quarterly forecasts, identifying at-risk deals needing remedial action, and predicting revenue generating events.  Due to its numerous innovations in business activity data analysis and related areas, People.ai has been awarded more than forty patents from the United States Patent and Trademark Office since it was founded in 2016.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,679,001

9.     People.ai repeats and realleges the foregoing paragraphs.

10.     Defendant SetSail has directly and/or indirectly infringed one or more claims of the '001 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '001 patent within the United States, and/or by contributing to or inducing such infringement.

11.     SetSail has known of the Patents-in-Suit and its infringement of the '001

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

patent at least as early as October 12, 2020 when it received correspondence from People.ai concerning its infringement.  SetSail received further correspondence from People.ai concerning its infringement of the '001 patent on or about November 4, 2020, and November 18, 2020.

12.     SetSail's direct infringements – and/or the direct infringements of others, for which SetSail would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '001 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the SetSail Collect module to exemplary claim 8 of the '001 patent is attached as Exhibit E.

13.     Defendant SetSail is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '001 patent and/or Defendant SetSail has made, used, sold, offered to sell, or imported into the U.S. products, made by methods claimed in the '001 patent, including at least the SetSail Collect module.

14.     Defendant SetSail is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '001 patent and/or that have made, used, sold, offered to sell, or imported into the U.S., products made by methods claimed in the '001 patent.

15.     On information and belief, defendant SetSail has actively induced infringement of the '001 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '001 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, SetSail had knowledge of and intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '001 patent and such infringement.  SetSail provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

16.     On information and belief, defendant SetSail is also a contributory infringer

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

of one or more claims of the '001 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '001 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

17.     The SetSail Collect module includes the specific functionality of SetSail's product offerings that is used to perform the limitations of each asserted claim of the '001 patent.  The SetSail Collect module performs the limitations of each asserted claim through its default functionality as provided by SetSail and the SetSail Collect module has no substantial non-infringing use.  On information and belief, prior to this action SetSail had knowledge of the '001 patent and intended to cause direct infringement by others, and/or SetSail willfully blinded itself to the existence of the '001 patent and such infringement.

18.     For example, SetSail's customers that use the SetSail Collect module identified above infringe at least independent claim 8 of the '001 patent, as set forth in Exhibit E.

19.     The non-provisional patent application that led to the '001 patent was filed with the U.S. Patent and Trademark Office on May 21, 2019, and the patent issued on June 9, 2020.  The U.S. Patent Office carefully examined the claims that ultimately issued in the '001 patent.  Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '001 patent, a person having ordinary skill in the art would understand that each claim of the '001 patent (independent or dependent) relates to a separate invention distinct from other claims.

20.     The U.S. Patent Office considered the claims of the '001 patent against the background of prior technology to determine if the claims of the '001 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '001 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '001 patent.

21.     The claims of the '001 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

22.     The inventions claimed in the '001 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

23.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is demonstrated, for example, by praise People.ai received for its inventions. For example, People.ai has been described as "employ[ing] the industry's most sophisticated matching algorithms to ensure that information from sales and marketing activities end up with the right accounts and opportunities in the CRM," and for "leverag[ing] AI to detect competitor mentions, analyze sentiment, and enrich contact data, helping you identify the best actions to take." *See* https://crm.org/news/peopleai-where-humans-and-machines-make-crm-better.  People.ai has also been recognized for its "exceptional innovation within the information technology industry" based on the ability of its platform to "help enterprises accelerate time to revenue by automating manual processes and delivering critical intelligence across sales, marketing, customer success, and other go-to-market teams to make them smarter and more efficient." *See* https://contentenginellc.com/2019/09/26/peopleai-recognized-by-451-research-as-a-451-firestarter/.  Such recognition supports the conclusion that People.ai's patented technology is not merely based on the generic collection and storing of data, but rather it embodies specific innovations in the area of business intelligence that represent technological improvements to conventional systems and methods.

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

24.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by copying of the invention by others in the industry, including, in particular, SetSail.

25.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by People.ai's commercial success with its products that embody certain claims of the '001 patent.

26.     A person of ordinary skill in the art would also understand that the claims of the '001 patent did not pre-empt any field and are not merely directed to methods or systems for recognizing and storing data, but are specific improvements in technology that improve computer functionality.

27.     The '001 patent explains that "due to the large volume of heterogeneous electronic communications transmitted between devices and the challenges of manually entering data, inputting the information regarding each electronic communication into a system of record can be challenging, time consuming, and error prone." Ex. A at 1:33-37.  The '001 patent further explains that when systems are self-populated, there is potential for error or noncompliance with companies' data management policies. *Id*. at 1:44-52.  The '001 patent further explains that training a filtering model provides an improvement to such inputting of information and helps prevent errors. *Id*. at 1:63-2:23.

28.     The claims of the '001 patent address the challenges faced by enterprises with their systems of record by providing systems and methods for filtering a company's electronic activities such as emails or calendar information using tags and information obtained from such electronic activities.  The claimed systems and methods can use a tagging engine or electronic activity parser to determine terms, text, content, or other information in the data or metadata of electronic activities to determine compliance with

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

a filtering policy.  *Id*. at 79:40-67.  Additionally, the claimed invention may use logic-based filtering or heuristics to filter electronic activities that relate to content that contains characteristics of commonly filtered data, for example, involving government investigative agencies or protected health information.  *See id*. at 81:64-82:36.  The claimed invention also allows for the use of multiple filtering policies, and the use of a tagging engine, for example, eliminates the need for re-analysis of content and reduces the likelihood of error and time of review that would be necessary if performed by a human. The invention also eliminates the need to repeatedly analyze data when multiple filters or policies are applied, thus improving the efficiency and accuracy of the system, and reducing the processing power or other resources necessary to conduct an analysis or make an association between a record object and an electronic activity.

29.     Therefore, the claims of the '001 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an enterprise, such as a customer relationship management system, or to systems that maintain, update or analyze CRMs.  The claims of the '001 patent also were not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

30.     As would be appreciated by a person having ordinary skill in the art, the separate claims of the '001 patent also pertain to parsing electronic activities using specific policies and rules that rely upon specific contents of the electronic activity to filter certain categories of information for further analysis or dissemination in the system. Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '001 patent are not generically directed to collecting and filtering data. Rather the claims of the '001 would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a specific system for automatically restricting certain electronic activities from being matched with record objects using structured data tags in compliance with certain company and role based

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

policies and for automatically matching other electronic activities that do not satisfy multiple restriction conditions to corresponding record objects in a system of record.

31.    In addition, prior to the '001 patent, systems of record such as customer relationship management systems or systems that maintain, update or analyze CRMs did not allow for the association between electronic activities and data tags, and they did not allow for the real-time association and filtering of information associated with electronic activities based on data and metadata stored within the customer relationship management system.  Therefore, a person having ordinary skill in the art would understand that the '001 patent and its claims represent concrete and technological improvements to business intelligence systems by allowing for the generating of dynamic associations between record objects and certain electronic activities that do not satisfy certain restriction conditions, and the filtering of targeted content, such as other electronic activities that satisfy one or more restrictions conditions. These concrete improvements include the determination of accurate predictions relating to record objects using data and metadata of certain, authorized electronic activities matched to the record objects, and the presentation of such predictions to business decision makers, making it possible for the enterprise to obtain benefits of the data stored within its systems of record that could not be obtained using conventional systems, while limiting the amount of data stored in the systems of record, thereby improving memory resource utilization and reducing the risk of damages resulting from a data breach of the systems of record.

32.    A person having ordinary skill in the art would understand that the separate claims in the '001 patent also did not pre-empt any field, but are highly specific and technical improvements to a system of record such as a customer relationship management system or to a system that maintains, updates or analyzes CRMs.  A person having ordinary skill in the art would also recognize that the claims of the '001 also do not relate to implementation of a business method on a general purpose computer, but are improvements to systems of record based on the matching of electronic activities to record objects.

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

33.     The claims of the '001 patent are also directed to specific improvements in computer functionality.  Among other things, the claimed inventions improve functionality of systems of record such as customer relationship management systems by determining real time relationships between electronic activities and dynamically providing data and metadata information and other information from electronic activities. The claimed inventions provide a device which continuously and consistently provides insights regarding business operations and can make real-time updates to filtering decisions of electronic activities.  The claimed inventions also provide a device that can intelligently determine relationships within sets of data, thus improving efficiency.

34.     These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art at the time of invention of the '001 patent.  Further, including in view of these specific improvements, the inventions claimed in the '001 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '001 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

35.     The inventions claimed in the '001 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies in order to provide new functionality and overcome inefficiencies, including those noted above.   The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

36.     People.ai has sustained damages as a result of SetSail's direct and/or indirect infringement of the '001 patent identified herein and SetSail is liable for such damages in this action, including pre-suit damages.

37.     People.ai has no adequate remedy at law for SetSail's continued infringement of the '001 patent such that the Court must enjoin SetSail from further acts of infringement.

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

38.     On information and belief, SetSail's direct and/or indirect infringement of the '001 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284.  As stated above, SetSail knew of the '001 patent and its infringement before this suit was filed, SetSail has continued to infringe the '001 patent after such knowledge, and SetSail knew or should have known that its conduct infringed the '001 patent.

39.     In addition, SetSail's conduct in infringing the '001 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 10,565,229

40.     People.ai repeats and realleges the foregoing paragraphs.

41.     Defendant SetSail has directly and/or indirectly infringed one or more claims of the '229 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '229 patent within the United States, and/or by contributing to or inducing such infringement.

42.     SetSail has known of the Patents-in-Suit and its infringement of the '229 patent at least as early as October 12, 2020 when it received correspondence from People.ai concerning its infringement.  SetSail received further correspondence from People.ai concerning its infringement of the '229 patent on or about November 4, 2020, and November 18, 2020.

43.     SetSail's direct infringements – and/or the direct infringements of others, for which SetSail would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '229 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the SetSail Collect module to exemplary claim 19 of the '229 patent is attached as Exhibit F.

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

44.     Defendant SetSail is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '229 patent and/or Defendant SetSail has made, used, sold, offered to sell, or imported into the U.S. products made by methods claimed in the '229 patent, including at least the SetSail Collect module.

45.     Defendant SetSail is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '229 patent and/or that have made, used, sold, offered to sell, or imported into the U.S., products made by methods claimed in the '229 patent.

46.     On information and belief, defendant SetSail has actively induced infringement of the '229 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '229 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, SetSail had knowledge of and intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '229 patent and such infringement.  SetSail provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

47.     On information and belief, defendant SetSail is also a contributory infringer of one or more claims of the '229 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '229 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

48.     The SetSail Collect module includes the specific functionality of SetSail's product offerings that is used to perform the limitations of each asserted claim of the '229 patent.  The SetSail Collect module performs the limitations of each asserted claim through its default functionality as provided by SetSail and the SetSail Collect module

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

has no substantial non-infringing use.  On information and belief, prior to this action SetSail had knowledge of the '229 patent and intended to cause direct infringement by others, and/or SetSail willfully blinded itself to the existence of the '229 patent and such infringement.

49.     For example, SetSail's customers that use the SetSail Collect module identified above infringe at least independent claim 19 of the '229 patent, as set forth in Exhibit F.

50.     The non-provisional patent application that led to the '229 patent was filed with the U.S. Patent and Trademark Office on December 7, 2018, and the patent issued on February 18, 2020.  The U.S. Patent Office carefully examined the claims that ultimately issued in the '229 patent.  Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '229 patent, a person having ordinary skill in the art would understand that each claim of the '229 patent (independent or dependent) relates to a separate invention distinct from other claims.

51.     The U.S. Patent Office considered the claims of the '229 patent against the background of prior technology to determine if the claims of the '229 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '229 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '229 patent.

52.     The claims of the '229 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

53.     The inventions claimed in the '229 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

54.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is demonstrated, for example, by praise People.ai received for its invention, as noted above.

55.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by copying of the invention by others in the industry, including, in particular, SetSail.

56.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by People.ai's commercial success with its products that embody certain claims of the '229 patent.

57.     A person of ordinary skill in the art would understand that the claims of the '229 patent did not pre-empt any field and are not merely directed to methods or systems for recognizing and storing data, but are specific improvements in technology that improve computer functionality.

58.     The '229 patent explains that "Enterprises and other companies spend significant amount of resources to maintain and update one or more systems of records," for example customer relationship management (CRM) systems, enterprise resource planning (ERP) systems, document management systems, applicant tracking systems, and other systems.  Ex. B at 49:37-39.  The '229 patent further explains that such systems are typically updated manually and in a manner that does not reflect all of the data available to the enterprise, or "the information that is updated into the systems of records can be incorrect due to human error, or in some cases, malicious intent."  *Id*. at 49:44-46.  The '229 patent further explains that such information may otherwise be outdated, incorrect

or incomplete.  *Id*. at 49:48-51.

59.     The claims of the '229 patent address specific challenges faced by enterprises with their systems of record by providing systems and methods for automatically and dynamically matching electronic activities such as emails or calendar events directly to record objects of an enterprise's systems of records.  The '229 patent explains that "as electronic activities are exchanged between users, these electronic activities can be parsed to not only update a node graph [], but further update shadow record objects for one or more systems of records of enterprises that have provided access to such systems of record" to a data processing system.  *Id*. at 49:62-66.  The '229 patent also provides that "the electronic activities can be used to directly update the one or more systems of records of the enterprises without first updating a shadow record object."  *Id*. at 50:5-7.  Finally, the '229 patent provides that "the linked electronic activities can be stored in association with one or more record objects to which the electronic activity is linked in a system of record" because "linking the electronic activities to the record objects can provide context to the electronic activities."  *Id*. at 50:28-36.  Such context may be "direct" context, including for example what happened in the electronic activity or record object, who was involved in the electronic activity or record object, or identifying the contact, node, person, or business process to which the electronic activity or record object should be assigned.  *Id*. at 50:30-36.  Such context also may be "indirect," such as why the electronic activity occurred.  *Id*. at 50:36-44.

60.     The various claims of the '229 patent are directed to specific policy-based approaches to storing such associations between a record object and an electronic activity that include, for example, determining a data source provider associated with an electronic activity, identifying a system of record corresponding to the data source provider, and identifying the sender and recipients of an electronic activity.  The claims further recite determining that an electronic activity is to be matched to a first set of record objects based on filtering rules of a first policy, then identifying a first set of candidate record objects to which to match the electronic activity based on a second

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

policy including rules for identifying one or more record objects based on an object field value that includes identifying one or more recipients, and finally identifying a second set of candidate record objects to which to match the electronic activity based on the second policy including rules for identifying one or more record objects that include identifying the sender of the electronic activity. By applying multiple filtering policies and sets of rules, the systems and methods claimed in the '229 patent are able to instantly and intelligently associate candidate record objects with electronic activities.

61.     Therefore, the claims of the '229 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an enterprise, such as a customer relationship management system or to systems that maintain, update or analyze CRMs. The claims of the '229 patent were also not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

62.     As would be appreciated by a person having ordinary skill in the art, the separate claims of the '229 patent also pertain to storing an association between a candidate record object and an electronic activity based on multiple specific policies and rules that rely upon specific contents of the electronic activity and the candidate record object. Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '229 patent are not generically directed to collecting data and making a calculation. Rather the claims of the '229 would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a system for storing an association between a candidate record object and an electronic activity in a specific manner that includes applying multiple sets of rules and filtering policies, such that the data from the record object and the electronic activity matched to the record object are both accessible to the system.

63.     In addition, prior to the '229 patent, systems of record such as customer relationship management systems did not allow for such context-aware association

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

between record objects and electronic activities, and they did not allow for the intelligent and instantaneous matching of record objects and electronic activities in the manner that is claimed.  Therefore, a person having ordinary skill in the art would understand that the '229 patent and its claims represent concrete and technological improvements to business intelligence systems by allowing for the generating of dynamic associations between record objects and electronic activities. These concrete improvements include the generation of associations based on multiple specific rules and policies, and the generation of associations based on direct and indirect context, making it possible for the enterprise to make valuable connections between electronic activities and record objects that could not be made in the prior art.

64.    A person having ordinary skill in the art would understand that the separate claims in the '229 patent also did not pre-empt any field, but are highly specific and technical improvements to a system of record such as a customer relationship management system.  A person having ordinary skill in the art would also recognize that the claims of the '229 do not relate to implementation of a business method on a general purpose computer, but are improvements to systems of record based on specific approaches for matching of electronic activities to record objects utilizing the recited rules and filtering policies.

65.    The claims of the '229 patent are also directed to specific improvements in computer functionality.  Among other things, the claimed inventions improve functionality of systems of record such as customer relationship management systems or to systems that maintain, update or analyze CRMs by determining real time relationships between electronic activities and record objects and dynamically providing connections between electronic activities and record objects based on direct and indirect context.  Thus, the claimed inventions provide a system that can intelligently infer relationships within sets of data, thus improving efficiency.  The claimed inventions also improve computer efficiency and reduce resource consumption, for example by allowing multiple updates to a CRM dynamically without the need to run multiple individual searches

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

across databases.

66.     These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art at the time of invention of the '229 patent.  Further, including in view of these specific improvements, the inventions claimed in the '229 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '229 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

67.     The inventions claimed in the '229 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies in order to provide new functionality and overcome inefficiencies, including those noted above.   The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

68.     People.ai has sustained damages as a result of SetSail's direct and/or indirect infringement of the '229 patent identified herein and SetSail is liable for such damages in this action, including pre-suit damages.

69.     People.ai has no adequate remedy at law for SetSail's continued infringement of the '229 patent such that the Court must enjoin SetSail from further acts of infringement.

70.     On information and belief, SetSail's direct and/or indirect infringement of the '229 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284.  As stated above, SetSail knew of the '229 patent and its infringement before this suit was filed, SetSail has continued to infringe the '229 patent after such knowledge, and SetSail knew or should have known that its conduct infringed the '229 patent.

71.     In addition, SetSail's conduct in infringing the '229 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

action under 35 U.S.C. § 285.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 10,496,634

72.     People.ai repeats and realleges the foregoing paragraphs.

73.     Defendant SetSail has directly and/or indirectly infringed one or more claims of the '634 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '634 patent within the United States, and/or by contributing to or inducing such infringement.

74.     SetSail has known of the Patents-in-Suit and its infringement of the '634 patent at least as early as October 12, 2020 when it received correspondence from People.ai concerning its infringement.  SetSail received further correspondence from People.ai concerning its infringement of the '634 patent on or about November 4, 2020, and November 18, 2020.

75.     SetSail's direct infringements – and/or the direct infringements of others, for which SetSail would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '634 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the SetSail Collect and SetSail Discover modules to exemplary claim 10 of the '634 patent is attached as Exhibit G.

76.     Defendant SetSail is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '634 patent and/or Defendant SetSail has made, used, sold, offered to sell, or imported into the U.S. products, made by methods claimed in the '634 patent, including at least the SetSail Collect and/or SetSail Discover modules.

77.     Defendant SetSail is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '634 patent and/or that

have made, used, sold, offered to sell, or imported into the U.S., products made by methods claimed in the '634 patent.

78.     On information and belief, defendant SetSail has actively induced infringement of the '634 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '634 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, SetSail had knowledge of and intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '634 patent and such infringement.  SetSail provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

79.     On information and belief, defendant SetSail is also a contributory infringer of one or more claims of the '634 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '634 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use. The SetSail Collect and/or SetSail Discover modules include the specific functionality of SetSail's product offerings that is used to perform the limitations of each asserted claim of the '634 patent.  The SetSail Collect and/or SetSail Discover modules perform the limitations of each asserted claim through their default functionality as provided by SetSail and the SetSail Collect and/or SetSail Discover modules have no substantial non-infringing use.  On information and belief, prior to this action SetSail had knowledge of the '634 patent and intended to cause direct infringement by others, and/or SetSail willfully blinded itself to the existence of the '634 patent and such infringement.

80.     For example, SetSail's customers that use the SetSail Collect and SetSail Discover modules identified above infringe at least independent claim 10 of the '634 patent, as set forth in the Exhibit G.

81.     The non-provisional patent application that led to the '634 patent was filed

with the U.S. Patent and Trademark Office on April 29, 2019, and the patent issued on December 3, 2019.  The U.S. Patent Office carefully examined the claims that ultimately issued as the '634 patent.  Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '634 patent, a person having ordinary skill in the art would understand that each claim of the '634 patent (independent or dependent) relates to a separate invention distinct from other claims.

82.    The U.S. Patent Office considered the claims of the '634 patent against the background of prior technology to determine if the claims of the '634 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '634 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '634 patent.

83.    The claims of the '634 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

84.    The inventions claimed in the '634 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

85.    That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is demonstrated, for example, by praise People.ai received for its invention, as noted above.

86.    That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

the invention, is also demonstrated, for example, by copying of the invention by others in the industry, including, in particular, SetSail.

87.    That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by People.ai's commercial success with its products that embody certain claims of the '634 patent.

88.    A person of ordinary skill in the art would understand that the claims of the '634 patent did not pre-empt any field and are not merely directed to methods or systems for recognizing and storing data, but are specific improvements in technology that improve computer functionality.

89.    The '634 patent explains that "Enterprises and other companies spend significant amount of resources to maintain and update one or more systems of records," such as CRM systems, enterprise resource planning (ERP) systems, document management systems, applicant tracking systems, and other systems.  Ex. C at 177:19-24. The '634 patent further explains that such systems are typically updated manually and in a manner that does not reflect all of the data available to the enterprise, resulting in incorrect and outdated information.  *Id*. at 177:26-31.  The '634 patent further explains that enterprises may use systems of record to make projections or predictions with respect to business processes and such projections or predictions may likewise be inaccurate if the data on which they rely is out of data or incorrect.  *Id*. at 177:31-35.

90.    The claims of the '634 patent address the challenges faced by enterprises with their systems of record by providing systems and methods for linking a company's electronic activities such as emails or calendar information to a company's systems of record and using information obtained from such electronic activities to determine a "completion score" for a business opportunity.  Such completion scores are determined dynamically based on timestamped information from the company's records and other information such as the role, the title or the department of an individual who is identified

in an electronic activity.  *Id.* at 184:26-61.  For example, the completion score may be determined using an enrichment module, using time distributions of certain electronic activities, or based on one or more heuristics or machine learning policies.  *Id*.

91.     Therefore, the claims of the '634 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an enterprise, such as a customer relationship management system or to systems that maintain, update or analyze CRMs. The claims of the '634 patent were also not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

92.     As would be appreciated by a person having ordinary skill in the art, the separate claims of the '634 patent also pertain to calculating a completion score based on constantly changing variables that may be aggregated and compared for the purposes of, for example, predicting the likelihood of the completion or occurrence of a certain revenue generating event for a business.  Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '634 patent are not generically directed to collecting data and making a calculation.  Rather the claims of the '634 would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a specific system for computing a completion score and storing an association between a record object and a completion score using electronic activities that have been matched to record objects in a specific manner, including using timestamp data and information derived from the electronic activity.

93.     In addition, prior to the '634 patent, systems of record such as customer relationship management systems or systems that maintain, update or analyze CRMs did not allow for the association between record objects and completion scores, and they did not allow for the prediction of revenue generating events based on real-time data stored within the customer relationship management system.  Therefore, a person having ordinary skill in the art would understand that the '634 patent and its claims represent

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

concrete and technological improvements to business intelligence systems by allowing

for the generating of dynamic associations between record objects and completion scores.

These concrete improvements include the determination of accurate predictions of

revenue generating events, and the presentation of such predictions to business decision

makers, making it possible for the enterprise to obtain the benefit of the data within its

systems of record without having to access servers on which the electronic activities

matched to the record objects are stored.

94.    A person having ordinary skill in the art would understand that the separate

claims in the '634 patent also did not pre-empt any field, but are highly specific and

technical improvements to a system of record such as a CRM, or to systems that

maintain, update or analyze CRMs.  A person having ordinary skill in the art would also

recognize that the claims of the '634 also do not relate to implementation of a business

method on a general purpose computer, but are improvements to systems of record  or to

systems that maintain, update or analyze CRMs based on the matching of electronic

activities to record objects.

95.    The claims of the '634 patent are also directed to specific improvements in

computer functionality.  Among other things, the claimed inventions improve

functionality of systems of record such as customer relationship management systems or

to systems that maintain, update or analyze CRMs by determining real time relationships

between electronic activities and record objects and dynamically providing feedback

utilizing time-stamps and other information from electronic activities.  The claimed

inventions provide a device which continuously and consistently provides insights

regarding business operations and can make real-time recommendations and predictions

as to how business performance targets can be achieved.  The claimed inventions also

provide a device that can intelligently infer relationships within sets of data, thus

improving efficiency.

96.    These noted improvements over the prior art represent meaningful

limitations and/or inventive concepts based upon the state of the art at the time of

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

invention of the '634 patent. Further, at least in view of these specific improvements, the inventions claimed in the '634 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '634 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

97. The inventions claimed in the '634 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies in order to provide new functionality and overcome inefficiencies, including those noted above. The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

98. People.ai has sustained damages as a result of SetSail's direct and/or indirect infringement of the '634 patent identified herein and SetSail is liable for such damages in this action, including pre-suit damages.

99. People.ai has no adequate remedy at law for SetSail's continued infringement of the '634 patent such that the Court must enjoin SetSail from further acts of infringement.

100. On information and belief, SetSail's direct and/or indirect infringement of the '634 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284. As stated above, SetSail knew of the '634 patent and its infringement before this suit was filed, SetSail has continued to infringe the '634 patent after such knowledge, and SetSail knew or should have known that its conduct infringed the '634 patent.

101. In addition, SetSail's conduct in infringing the '634 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

///

///

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 10,657,129

102.   People.ai repeats and realleges the foregoing paragraphs.

103.   Defendant SetSail has directly and/or indirectly infringed one or more claims of the '129 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '129 patent within the United States, and/or by contributing to or inducing such infringement.

104.   SetSail has known of the Patents-in-Suit and its infringement of the '129 patent at least as early as October 12, 2020 when it received correspondence from People.ai concerning its infringement.  SetSail received further correspondence from People.ai concerning its infringement of the '129 patent on or about November 4, 2020, and November 18, 2020.

105.   SetSail's direct infringements – and/or the direct infringements of others, for which SetSail would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '129 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the SetSail Collect module to exemplary claim 20 of the '129 patent is attached as Exhibit H.

106.   Defendant SetSail is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '129 patent and/or Defendant SetSail has made, used, sold, offered to sell, or imported into the U.S. products, made by methods claimed in the '129 patent, including at least the SetSail Collect module.

107.   Defendant SetSail is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '129 patent and/or that have made, used, sold, offered to sell, or imported into the U.S., products made by

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

methods claimed in the '129 patent.

108.   On information and belief, defendant SetSail has actively induced infringement of the '129 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '129 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, SetSail had knowledge of and intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '129 patent and such infringement.  SetSail provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

109.   On information and belief, defendant SetSail is also a contributory infringer of one or more claims of the '129 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '129 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

110.   The SetSail Collect module includes the specific functionality of SetSail's product offerings that is used to perform the limitations of each asserted claim of the '129 patent.  The SetSail Collect module performs the limitations of each asserted claim through its default functionality as provided by SetSail and the SetSail Collect module has no substantial non-infringing use.  On information and belief, prior to this action SetSail had knowledge of the '129 patent and intended to cause direct infringement by others, and/or SetSail willfully blinded itself to the existence of the '129 patent and such infringement.

111.   For example, SetSail's customers that use the SetSail Collect module identified above infringe at least independent claim 20 of the '129 patent, as set forth in Exhibit H.

112.   The non-provisional patent application that led to the '129 patent was filed with the U.S. Patent and Trademark Office on December 31, 2018, and the patent issued

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

on May 19, 2020.  The U.S. Patent Office carefully examined the claims that ultimately issued in the '129 patent.  Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '129 patent, a person having ordinary skill in the art would understand that each claim of the '129 patent (independent or dependent) relates to a separate invention distinct from other claims.

113.   The U.S. Patent Office considered the claims of the '129 patent against the background of prior technology to determine if the claims of the '129 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '129 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '129 patent.

114.   The claims of the '129 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

115.   The inventions claimed in the '129 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

116.   That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is demonstrated, for example, by praise People.ai received for its invention as noted above.

117.   That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by copying of the invention by others in

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

the industry, including, in particular, SetSail.

118.   That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by People.ai's commercial success with its products that embody certain claims of the '129 patent.

119.   A person of ordinary skill in the art would understand that the claims of the '129 patent did not pre-empt any field and are not merely directed to methods or systems for recognizing and storing data, but are specific improvements in technology that improve computer functionality.

120.   The '129 patent explains that "it may be challenging to accurately and efficiently populate fields in a node profile due to large number of member nodes." Ex. D at 2:4-6.  The '129 patent further explains that when systems are self-populated, there is potential for error or undesired data values due to inherent human bias.  *Id*. at 2:6-9.  The '129 patent further explains that such errors can cascade, causing "downstream components or functions that perform processing using the node profiles to malfunction or generate faulty outputs."  *Id*. at 2:9-12.

121.   The claims of the '129 patent address the challenges faced by enterprises with their systems of record by providing systems and methods for linking a company's electronic activities such as emails or calendar information to "node profiles" using information obtained from such electronic activities.  Such node profiles are determined dynamically by a "node graph generation system" based on information from the company's records and other information such as the role, the title or the department of an individual who is identified in an electronic activity.  *Id*. at 25:44-26:23.  For example, the node graph generation system may be updated daily, weekly, or monthly.  *Id*.

122.   Therefore, the claims of the '129 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

enterprise, such as a customer relationship management system or to systems that maintain, update or analyze CRMs.  The claims of the '129 patent were also not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

123.   As would be appreciated by a person having ordinary skill in the art, the separate claims of the '129 patent also pertain to parsing node profiles based on numerous constantly changing variables.  Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '129 patent are not generically directed to collecting and categorizing data.  Rather the claims of the '129 would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a specific system for storing an association between an electronic activity and node profiles, and using node profiles to match electronic activities to record objects in a specific manner, including using information derived from the electronic activity.

124.   In addition, prior to the '129 patent, systems of record such as customer relationship management systems or systems that maintain, update or analyze CRMs did not allow for the association between record objects and node profiles, and they did not allow for the real-time prediction of information associated with electronic activities based on data stored within the customer relationship management system.  Therefore, a person having ordinary skill in the art would understand that the '129 patent and its claims represent concrete and technological improvements to business intelligence systems by allowing for the generation of dynamic associations between electronic activities and record objects using node profiles. These concrete improvements include the determination of accurate predictions, and the presentation of such predictions to business decision makers, making it possible for the enterprise to obtain benefits from the data within its systems of record that were not possible using conventional systems.

125.   A person having ordinary skill in the art would understand that the separate claims in the '129 patent also did not pre-empt any field, but are highly specific and

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

technical improvements to a system of record such as a customer relationship management system or to systems that maintain, update or analyze CRMs.  A person having ordinary skill in the art would also recognize that the claims of the '129 also do not relate to implementation of a business method on a general purpose computer, but are improvements to systems of record based on the matching of electronic activities to record objects.

126.   The claims of the '129 patent are also directed to specific improvements in computer functionality.  Among other things, the claimed inventions improve functionality of systems of record such as customer relationship management systems or to systems that maintain, update or analyze CRMs by determining real time relationships between electronic activities and record objects and dynamically providing node profile information and other information from electronic activities.  The claimed inventions provide a device which continuously and consistently provides insights regarding business operations and can make real-time updates to record objects and assist how business performance targets can be achieved.  The claimed inventions also provide a device that can intelligently infer relationships within sets of data, thus improving efficiency.

127.   These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art at the time of invention of the '129 patent.  Further, including in view of these specific improvements, the inventions claimed in the '129 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '129 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

128.   The inventions claimed in the '129 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies in order to provide new functionality and overcome inefficiencies, including those noted

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

above.   The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

129.   People.ai has sustained damages as a result of SetSail's direct and/or indirect infringement of the '129 patent identified herein and SetSail is liable for such damages in this action, including pre-suit damages.

130.   People.ai has no adequate remedy at law for SetSail's continued infringement of the '129 patent such that the Court must enjoin SetSail from further acts of infringement.

131.   On information and belief, SetSail's direct and/or indirect infringement of the '129 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284.  As stated above, SetSail knew of the '129 patent and its infringement before this suit was filed, SetSail has continued to infringe the '129 patent after such knowledge, and SetSail knew or should have known that its conduct infringed the '129 patent.

132.   In addition, SetSail's conduct in infringing the '129 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, People.ai requests that this Court enter judgment as follows ordering:

(a)     That Defendant infringes the Patents-in-Suit by making, using, offering for sale, selling and/or offering to sell products covered by the claims of the Patents-in-Suit within the United States, and/or by contributing to and/or inducing such infringement;

(b)     That Defendant's infringement of the Patents-in-Suit is and has been willful;

(c)     That Defendant and its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them or on their behalf, or acting in concert with them, be preliminarily and permanently enjoined from further infringement of Plaintiff's patent rights;

(d)     That Defendant be ordered to account for and pay to Plaintiff damages adequate to compensate for their infringement of the Patents-in-Suit, including lost profits and/or reasonable royalty, with prejudgment interest;

(e)     That a post-judgment equitable accounting of damages be ordered for the period of infringement of the Patents-in-Suit following the period of damages established by Plaintiff at trial;

(f)     That damages be trebled for the willful, deliberate, and intentional infringement by Defendant as alleged herein in accordance with 35 U.S.C. § 284;

(g)     That this case be adjudged an exceptional case under 35 U.S.C. § 285 and that Plaintiff be awarded its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendant; and

(h)     That Plaintiff will be awarded such other relief as the Court deems just and proper.

///

///

///

///

COMPLAINT AND JURY DEMAND
Case No. 3:20-cv-9148

# JURY DEMAND

People.ai demands a trial by jury on all issues so triable.

DATED:  December 17, 2020

**FOLEY & LARDNER LLP**


/s/ Alan R. Ouellette
Alan R. Ouellette
Jeffrey N. Costakos (*Pro Hac Vice* motion forthcoming)
Matthew W. Peters (*Pro Hac Vice* motion forthcoming)
Lucas I. Silva (*Pro Hac Vice* motion forthcoming)

Attorneys for Plaintiff
PEOPLE.AI, INC.