UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEOPLE.AI, INC.,

    Plaintiff,

v.

SETSAIL TECHNOLOGIES, INC.,

    Defendant.

No. C 20-09148 WHA

**ORDER RE SETSAIL TECHNOLOGIES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

In this patent infringement suit, SetSail Technologies, Inc. moves to dismiss the amended complaint. For the following reasons, the motion is **GRANTED**.

**STATEMENT**

Patent owner People.ai, Inc. asserts five patents: U.S. Patent Nos. 10,679,001 ("the '001 patent"); 10,565,229 ("the '229 patent"); 10,496,634 ("the '634 patent"); 10,657,129 ("the '129 patent"); and 10,503,783 ("the '783 patent"). The asserted patents address data-analytics software that optimize customer-relationship management ("CRM") systems.

CRM platforms such as Salesforce manage a business's relationships and interactions with customers in order to streamline sales. The more data input into the system, the more helpful CRM platforms can be. People.ai has developed patented software that uses machine learning (*i.e.*, artificial intelligence) to automate data parsing and analysis to improve the quality of information input into a CRM system. SetSail competes in the same burgeoning market as People.ai, and offers various software packages, including SetSail Collect and Discover ("SetSail software").

Around October 2020, People.ai first contacted SetSail regarding infringement of its patents by SetSail's software, and sued in December (Compl. ¶ 11). SetSail moved to dismiss in February 2021, which prompted People.ai's amendment as of right in March (Amd. Compl., Dkt. No. 36). SetSail now moves to dismiss the amended complaint. This order follows full briefing and oral argument (held telephonically due to COVID-19).

**ANALYSIS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the misconduct alleged. While a court must take all of the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Ibid.* Of particular importance below, in both *Twombly* and *Iqbal* the Court made plain: allegations merely *consistent* with liability are not enough. 550 U.S. at 556–57; 556 U.S. at 678. Allegations of infringement "without explanation as to the *how* or *why* these products infringe . . . do[] not lead to any inference that plaintiff may be entitled to relief." *PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 851574, at *2 (N.D. Cal. Mar. 13, 2012).

1. **DIRECT INFRINGEMENT.**

    *A.    THE '001 PATENT.*

The '001 patent describes the use of machine learning to filter a user's electronic activities (*e.g.*, emails) to prevent certain electronic activities (*e.g.*, personal emails) from being ingested by the CRM platform ('001 patent at Abstract, Cl. 8). In a footnote in its opposition, People.ai withdraws its claim for the '001 patent, even though it subsequently argues the merits of the claim (Opp. 3 fn.1). This order accordingly dismisses the infringement claim as to the '001 patent on that basis.

    *B.    THE '229 PATENT.*

The '229 patent describes a system that matches electronic activities (*e.g.*, emails) with one or more record objects (*e.g.*, a specific customer profile) in the user's CRM platform ('229 patent at Abstract). The amended complaint provides a claim chart for exemplary claim 19 describing how the SetSail software infringes the patent (Amd. Compl. ¶ 41, Exh. G). After disclosing a filtering process that identifies responsive electronic activities, Claim 19 recites in relevant part (italics added):

> in response to determining that the electronic activity is to be matched to at least one record object of the identified system of record,
>
> identify a *first* set of candidate record objects . . . based on an object field value of the record object that identifies the one or more recipients;
>
> identify a *second* set of candidate record objects . . . based on the sender of the electronic activity, wherein the second policy includes a third set of rules for identifying candidate record objects of a second record object type;
>
> select at least one candidate record object included in both the *first* set of candidate record objects and the *second* set of candidate records objects; and
>
> store, in a data structure, an association between the selected at least one candidate record object and the electronic activity.

(col. 145:3–25). In other words, the patented system will: (1) identify a set of potential record objects (*e.g.*, a customer account) based on the *recipient* of an electronic activity (*e.g.*, an email); (2) identify a second set of potential record objects based on the *sender* of an electronic

3

activity; and (3) select a record object by cross-referencing the two sets. Defendants argue the amended complaint does not properly allege the SetSail software matches electronic activities using the elements claimed in the patent. This order agrees.

To support the allegations, the amended complaint presents a video screenshot showing that the SetSail software can identify both email recipients and senders and two quotes from defendant's blog:

- SetSail Collect was purpose-built to map every contact and interaction to the appropriate account or opportunity. . . .

- SetSail Collect captures every interaction a sales rep has. Collect will identify as much information as possible for every phone call, email, and meeting.

(Amd. Compl. Exh. G). These factual allegations indicate that, merely *consistent* with the '229 patent, the SetSail software can match emails to customer profiles. The amended complaint does not plausibly allege the software generates two sets of candidate record objects — instead citing the same screenshot and same two broad statements by SetSail for each limitation. Allegations that the SetSail software cross-references two sets of record objects receives short shrift in the amended complaint: "The mapping of multiple accounts/contacts and the capturing of every interaction a sales rep has as described by SetSail (and shown in the screen captures above) includes selecting a candidate record object in both the first and second sets of candidate record objects as claimed" (Amd. Compl. Ex. G at 18). This order need not accept this conclusory allegation regarding how the SetSail software matches emails to customers.

People.ai argues "given that SetSail parses emails to determine senders and recipients and that SetSail admits that it is able to match when there are multiple accounts for the same customer, it is certainly plausible (even highly likely) that SetSail applies rules based on senders and recipients in order to select the appropriate account or opportunity" (Opp. 11). But the amended complaint does not address *why* it is plausible that the SetSail software uses the specific elements of the patent as claimed, nor does it address why it cannot put forth additional, relevant factual allegations.

The amended complaint omits infringement allegations uncovered through any investigation People.ai may have made into the SetSail software's backend functionality. An order dated January 7, 2021, requires "a complaint [to] explain how or why an accused product infringes every element of every asserted claim or explain why that cannot be shown at this stage" (Dkt. No. 18 at ¶ 1). *See also PageMelding, Inc*, 2012 WL 851574, at *2. The amended complaint has not satisfied this requirement. People.ai notes in its *opposition* that it cannot review SetSail's source code and that information regarding infringing functionality will be uncovered in discovery (Opp. 11–12). But a Rule 12(b)(6) review does not consider allegations outside the pleadings, and the amended complaint fails to speak to People.ai's ability — or lack thereof — to probe the SetSail software for infringement. Because the facts as alleged are insufficient, the direct infringement claim for the '229 patent fails.

### C. THE '634 PATENT.

The '634 patent describes a system that develops a "completion score" for a particular business opportunity ('634 patent at Abstract, Cl. 10). SetSail argues the amended complaint's factual support is conjecture and fails to suggest that the SetSail software calculates a completion score using the same methods laid out in the patent. This order agrees.

Claim 10 of the '634 patent recites in relevant part:

> determine a completion score indicating a likelihood of completing an event associated with the first record object, the completion score based on [1] the timestamp of each of the plurality of electronic activities and [2] at least one of the role, the title, or the department of the at least one participant of each of the plurality of electronic activities;

(col. 196:64–197:3). To allege infringement of this element (and previous claim elements related to identifying timestamps and a participant's role/title/department), the amended complaint cites the following from SetSail's website:

- SetSail "[a]utomates the capturing of key customer interactions," including email.

- SetSail "enriches data" "by using third-party data providers to add job titles, emails, phone numbers."

- A "model is built using a range of sales data: customer

5

information, sales rep activity, voice/email communications, historical results, and more . . . . The model can then make predictions, such as how likely a deal is to be won based on content of communications between the sales rep and the customer."

- "The underlying machine learning technology predicts the likelihood of a deal to close."

(Amd. Compl. Exh. H). From these references, People.ai arguably alleges the SetSail software identifies timestamps for electronic activities. Capturing key interactions (first bullet) and harvesting email-communication data (third bullet) can include identifying email timestamps. From these references, People.ai also arguably alleges the SetSail Software can identify a participant's role/title/department though its use of third-party sources (second bullet) and identification of customer information (third bullet).

People.ai runs into a problem when it tries to merge these allegations and conclude that the SetSail software calculates a completion score as claimed in the patent. The amended complaint alleges the SetSail software has an array of different means at its disposal it can use to analyze data. The amended complaint, however, provides no plausible factual basis to conclude the SetSail software determines a completion score using the particular means of analyzing data claimed by the '634 patent — timestamp identification and role/title/department identification. Rather, the allegations reveal merely the possibility that the SetSail software has the capability to utilize the claimed combination of analyses. The amended complaint does not adequately allege the "how and why" of infringement, and People.ai has failed to address any practical obstacles to its investigation into infringement. Accepting all factual allegations in the amended complaint as true, People.ai does not properly allege the SetSail software infringes the '634 patent's recited limitations. *See Iqbal*, 556 U.S. at 678.

### D. THE '129 PATENT.

The '129 patent describes systems and methods that connect and update a "node profile" (*e.g.*, a profile for an activity participant) with information from related electronic activities (*e.g.*, emails) ('129 patent at Abstract, col. 1:41–65). SetSail argues here as well that People.ai only pleads that the SetSail software has the same (unprotected) end functionality. This order agrees.

6

SetSail primarily challenges the following limitation from exemplary claim 20:

> Match the electronic activity to at least one node profile of the plurality of node profiles based on determining that the extracted data of the electronic activity and one or more values of the fields of the at least one node profile satisfy a node profile matching policy;

(col. 199:39–43). "[S]uch node profiles are determined dynamically by a 'node graph generation system' based on information from the company's records and other information such as the role, the title or the department of an individual who is identified in an electronic activity" (Amd. Compl. ¶ 121 (citing '129 patent at 25:44–26:23)).

The amended complaint contains no factual allegations explaining *how* the SetSail software uses a "node graph generation system" to match electronic activities with node profiles. For example, the amended complaint cites SetSail's general claim that "SetSail Collect captures every interaction a sales rep has." This blurb does not plausibly indicate that the SetSail software uses a "node profile matching policy" powered by a "node graph generation system." People.ai pleads only conclusory explanations connecting the SetSail software to the claim elements that this order need not accept as true:

> Because SetSail uses electronic activities to determine whether to create new contacts, People.ai is informed and believes that SetSail matches electronic activities to node profiles of participants by determining extracted data (for example, an email address, a first or last name, or a company name) and data included in the node profile.

(Amd. Compl. Exh. I at 7). Similar to the '229 and '634 patents, the amended complaint does not sufficiently explain *how* or *why* SetSail infringes the '129 patent. Without further allegations, the claim remains purely speculative. *Twombly*, 550 U.S. at 554–55; *see also PageMelding, Inc*, 2012 WL 851574, at *2. The infringement claim for the '129 patent fails.

### E. THE '783 PATENT.

The '783 patent addresses whether to associate an electronic activity (*e.g.*, an email) with an existing record object (*e.g.*, a customer profile) or to create a new record object based upon whether a match score meets a certain minimum threshold ('783 Patent at abstract). SetSail

7

one again asserts that the amended complaint does not properly allege that the SetSail software uses the recited limitations of exemplary claim 12. This order agrees.

Exemplary claim 12 of the '783 patent contains, in relevant part, the following element (italics added):

> determine for each candidate record object, responsive to comparing the activity field-value pairs to the object-field value pairs of the plurality of candidate record objects, that a *match score* indicating a likelihood of the electronic activity matching the candidate record object does not satisfy a *threshold*;

('783 patent at 198:20–25). People.ai cites SetSail's blurb that: "Collect will automatically log when a meeting occurs, identify all attendees, and *creates new contacts if any of them aren't already a contact*" (Amd. Compl. Exh. J at 12) (emphasis in original).

These allegations suggest the SetSail software has similar functionality as the '783 patent — creating a new profile for a contact if one does not already exist in the system — but the amended complaint fails to assert that functionality is achieved using the patented elements. The amended complaint omits allegations regarding how SetSail creates a match score or matching threshold, and instead parrots the claim language: "People.ai is informed and believes that SetSail uses a match score to match an electronic activity to a candidate record objects of the plurality of candidate record objects to determine which candidate record object is the closest match with the electronic activity" (*ibid*). These conclusory recitations are insufficient to state a claim. *Twombly*, 550 U.S. at 555.

People.ai argues that whether the SetSail software uses a "match score" to associate electronic activities with candidate record objects concerns claim construction and not the sufficiency of the pleadings. But the parties have not presented conflicting interpretations of the claim terms here — People.ai has rather failed to properly address the "match score" and "threshold" elements at all beyond conclusory statements this order need not accept. Neither of the cases People.ai cites supports its argument (Opp. 19). *Nalco Co. v. Chem-Mod, LLC* focused on whether the patent owner pleaded facts that established a complete defense to its own claims, not whether the factual allegations were sufficiently plausible under *Twombly* and *Iqbal*. 883 F.3d 1337, 1347–48 (Fed. Cir. 2018). Plaintiff also cites the undersigned's order in

8

*Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00359 WHA, 2018 WL 2047553 (N.D. Cal. May 2, 2018). Uniloc's complaint alleged how Apple's product met a certain claim element — the parties just interpreted that particular limitation differently, a classic claim construction dispute. *Id.* at *3–4. Whereas here, the amended complaint has not adequately alleged how or why the SetSail software uses a match score *in the first place* — or what information People.ai requires to make that allegation. *PageMelding*, 2012 WL 851574, at *2. People.ai's infringement claim for the '783 patent accordingly fails.

### 2. INDIRECT INFRINGEMENT.

SetSail contends the amended complaint fails to state a claim for indirect infringement because it (1) fails to plead a direct infringement claim and (2) fails to allege facts showing either induced or contributory infringement. Both contributory and induced infringement require sufficient allegations of direct infringement. *See* 35 U.S.C. § 271(b), (c); *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016). As explained, People.ai fails to state a claim for direct infringement for each patent asserted. But even if People.ai had successfully pleaded direct infringement, its indirect infringement arguments still fail.

#### A. *INDUCED INFRINGEMENT.*

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Such knowledge requires that the accused inducer not only had "knowledge of the patent in suit" but also "knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015). The accused inducer must also have possessed "a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

The amended complaint's perfunctory recitation of the elements of induced infringement fail to provide factual support for the claim. For example, for the '634 patent: "On information and belief, prior to this action, SetSail had knowledge of and intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '634

9

patent and such infringement" (Amd. Compl. ¶ 78). People.ai has simply couched its legal conclusions in the guise of factual allegations, which *Twombly* and *Iqbal* soundly rejected. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

The amended complaint also provides only a cursory overview of pre-suit correspondence between the parties, and does not allege that a claim chart or other description of infringement was included with the correspondence (Amd. Compl. ¶¶ 11, 42, 74, 104, 135). Bare allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement. People.ai's induced infringement theory fails.

### *B.  CONTRIBUTORY INFRINGEMENT.*

To state a claim for contributory infringement, the patent owner must properly allege: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

The amended complaint repeats the same assertion for each patent. The allegations regarding, for example, the '634 patent state:

> On information and belief, defendant SetSail is also a contributory infringer of one of more claims of the '634 patent, at least because it sells, offers to sell, or imports into the US a product for use in practicing subject matter claimed in the '634 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

(Amd. Compl. ¶ 79). This merely parrots the text of Section 271(c). Such a legal conclusion is not entitled to the presumption of truth.

As explained, People.ai does not properly allege pre-suit knowledge. The amended complaint also provides no insight into how the SetSail software constitutes a component of a larger system infringing the patents at issue. Without more factual matter, People.ai has not satisfied Rule 8's requirement for "fair notice of what the claim is and the grounds upon which

it rests." *Twombly*, 550 U.S. at 555 (cleaned up). For these reasons, People.ai's contributory liability claim fails.

### 3. IMPORT AND EXPORT ALLEGATIONS.

People.ai includes in its allegations (fleeting) references to 35 U.S.C. § 271(f) and (g), which extend liability for patent infringement to the export from the United States of a patented invention's components, and the import into the United States of products made by a patented process, respectively. These allegations fail. In short, software in the abstract can be neither a component, as required by Section 271(f), nor a manufacture, as required by Section 271(g). *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 450–51 (2007) (Section 271(f)); *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003) (Section 271(g)).

Moreover, the amended complaint's allegations regarding import and export are conclusory, boilerplate insertions, such as, "Defendant SetSail is liable as an indirect infringer for the direct infringement of others that have made, used, sold, or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '634 patent" (Amd. Compl. ¶ 77). The amended complaint pleads no further information regarding activities outside the United States. People.ai attempts to exonerate its pleading in its opposition, arguing: "SetSail does not claim that it does not engage in any import/export activity or that it has no customers, business partners, or operations abroad" (Opp. 24). Double negative aside, it is not the sufficiency of SetSail's denial at issue here but the sufficiency of the amended complaint. This order does not accept as true the amended complaint's conclusory allegations regarding Section 271(f) and (g), which People.ai appears to acknowledge as speculative. *Twombly*, 550 U.S. at 555.

For the foregoing reasons, People.ai's Section 271(f) and (g) allegations fail.

## CONCLUSION

For the above reasons, SetSail's motion to dismiss is **GRANTED**.

People.ai may move for leave to file an amended complaint. People.ai has **FOURTEEN DAYS** from the date of this order to file a motion, noticed on the normal 35-day calendar, for leave to file an amended complaint. Their motion must affirmatively demonstrate how the

11

proposed amended complaint corrects the deficiencies identified in this order, as well as any other deficiencies raised in defendant's motion, if at all, but not addressed herein. The motion should be accompanied by a proposed amended complaint as well as a redlined copy of the amended complaint. People.ai must plead its best case.

**IT IS SO ORDERED.**

Dated: June 8, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE